IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>CHARLES C. HEAD,<br>JEREMEY M. HEAD,<br><br>                Defendants. | CASE NO.  2:08-CR-00093-KJM<br><br>ORDER |

      The government charged both defendants with conspiracy to commit mail fraud, and each defendant was charged with multiple substantive counts of mail fraud.  Some of the substantive counts of mail fraud involved the mailing of rent checks.  Other counts were based on the mailing of deeds from county recorders' offices.

      The case came on for jury trial on May 6, 2013.  After the close of evidence, presented over more than three weeks, the jury returned verdicts of guilty on all counts.  The defendants have moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal on Counts Two, Three and Six, the counts involving the mailing of grant deeds.  The defendants argue that the government did not prove that the mailing of those deeds was "essential to the scheme" to defraud.  The government has responded that the scheme to defraud was an ongoing scheme with multiple iterations spanning years, and that the mailing of the deeds allowed this ongoing scheme to continue.  The government also responds that under relevant

1

Supreme Court and Ninth Circuit precedent, a mailing need only be incidental to an essential part of the scheme.

When reviewing a defendant's motion for judgment of acquittal, the court views the evidence in the light most favorable to the verdict. *United States v. Figueroa-Paz*, 468 F.2d 1055, 1058 (9th Cir. 1972); *United States v. Nelson*, 419 F.2d 1237 (9th Cir. 1969). If, viewing the evidence in that light, the jury could reasonably have found the defendants guilty beyond a reasonable doubt, the defendants' motions for acquittal must be denied. *Figueroa-Paz*, 468 F.2d at 1058. The court, having considered the pleadings of the parties, the argument held on July 24, 2013, and the evidence presented at trial, denies the motions.

The evidence at trial, viewed in the light most favorable to the verdict, showed that when the defendants and their co-schemers convinced a homeowner to take part in their program, they caused the homeowner to sign a grant deed conveying the property into the name of a straw buyer. The defendants and their co-schemers would apply for financing in the name of the straw buyer. When a lender funded a loan in the name of the straw buyer, the proceeds from the sale were wired to the bank accounts of the defendants or their co-schemers allowing the defendants to remove the accumulated equity in the home. As part of the process of closing the escrow on those transactions, the grant deeds signed by the former homeowners were recorded in the county where the property was located, and were subsequently mailed to the address specified on the upper left hand corner of the deed. This address was often an address associated with the defendants' business. After the transfer of ownership, the former homeowner would make monthly payments to the defendants and their co-schemers for up to a year or longer. The evidence presented at trial supported the conclusion that this process was repeated for multiple homeowners from early 2004 to late 2005.

In *Schmuck v. United States*, 489 U.S. 705 (1989), the Supreme Court considered a similar motion in the context of an odometer rollback fraud. The charged mailings were the title documents mailed after the cars in question had changed hands. The defendant argued that the mailings were not essential to the scheme because they occurred after the fraud was consummated. But the Supreme Court held the mailings were sufficient to satisfy the elements of the crime of mail fraud, partly because "Schmuck's was not a 'one-shot' operation in which he sold a single car to an isolated dealer. His was an ongoing fraudulent venture." *Id*. at 711. The Court continued that "although the registration-form mailings may not have contributed directly to

1  the duping of either the retail dealers or the customers, they were necessary to the passage of title, which in
2  turn was essential to the perpetuation of Schmuck's scheme." *Id*. at 712.

3  The reasoning of *Schmuck* is applicable in this case.  The mailing of the deeds was part and parcel of
4  the process by which the defendants' scheme was accomplished.  As in *Schmuck*, the evidence at trial
5  showed that the defendants in this case were not engaged in a "one-shot operation" to take title and equity
6  from a single homeowner, but were engaged in "an ongoing fraudulent venture."  Viewing the evidence in
7  the light most favorable to the verdict, the jury could have concluded that by mailing the deeds to
8  themselves, rather than to the former homeowners, the defendants delayed the discovery of the fraud and
9  prolonged their ability to collect monthly payments from the homeowners.  The jury could also have
10 rationally concluded that the routine mailing of the deeds was "essential to the perpetuation of [the
11 defendants'] scheme."

12 The government also cites *United States v. Lo*, 231 F.3d 471 (9th Cir. 2000), for the proposition that
13 grant deeds mailed by a county recorder to the lenders and owners, even after the loans had been funded and
14 the deeds had been recorded, could be found incidental to an essential aspect of a mail fraud scheme.
15 231 F.3d at 479.  In *Lo*, the mailing of the deeds sufficed even though it "occurred after the loans had been
16 funded and after the deeds had been recorded in the Recorder's office." *Id*. at 478.

17 As the Ninth Circuit wrote in *Lo*, "the issue is not one purely of time sequence.  Subsequent mailings
18 can in some circumstances provide the basis for an indictment under the mail fraud statutes." *Lo*, 231 F.3d at
19 478 (internal citation omitted).  The Ninth Circuit instructs that "the pertinent question is not whether or not
20 the defendant[s] had obtained all the money [they] expected to get before the mailing occurred." *Id*. at 479.
21 Rather, the mailing can occur after the defendants had obtained their proceeds of the fraud, provided that
22 "the mailing is part of the execution of the scheme as conceived by the perpetrator at the time." *Id*. at 478
23 (quoting *Schmuck*, 489 U.S. at 715).  Viewing the evidence in the light most favorable to the verdict, the jury
24 in this case could have concluded from the evidence that the mailings of the deeds was "a part of the
25 execution of the scheme" as envisioned by the defendants at the time of the scheme.

26 The defendants rely on *Parr v. United States*, 363 U.S. 370 (1960), *Kann v. United States*, 323 U.S.
27 88 (1944), and *United States v. Maze*, 414 U.S. 395 (1974).  In those cases, the Supreme Court held that
28 after-the-fact mailings of credit card statements (*Parr*), checks that had already been deposited (*Kann*), and

3

interbank credit card invoices (*Maze*) were insufficient to support a conviction for mail fraud because the mailings were made after the fraud was complete.  The Supreme Court, in *Schmuck*, distinguished these cases and explained, as noted above, that subsequent mailings may still satisfy the element if they are incidental to an essential part of the scheme, such as by perpetuating on ongoing fraud.

The nature of the scheme as alleged here and proven at trial shows that the individual home transactions were part of an ongoing scheme with multiple iterations.  A reasonable juror, viewing the evidence in the light most favorable to the verdict, could have found that the three mailings in question were essential to the perpetuation of the scheme as described in *Schmuck* or were part of the execution of the scheme as envisioned by the defendants as described in *Lo*.

Accordingly, the defendants' motions for judgments of acquittal are denied.

DATED:  September 6, 2013.

UNITED STATES DISTRICT JUDGE