UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:08-cr-00093-KJM-2 |
| Plaintiff/Respondent, | |
| v. | ORDER |
| JEREMY MICHAEL HEAD, | |
| Defendant/Petitioner. | |

Defendant Jeremy Michael Head moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 on twenty-four different grounds. Mot., ECF No. 1579. The government opposes the motion, arguing that each of these theories of relief fail as a matter of law. Opp'n, ECF No. 1596. Head has lodged a reply. ECF No. 1602. Head also moves for assistance of counsel regarding his 2255 motion. Mot. Counsel, ECF No. 1650. Having considered the motions and the relevant authority, Head's motion for counsel and motion for relief under § 2255 are DENIED.

I.   BACKGROUND

On February 11, 2010, a federal grand jury returned a superseding indictment, the operative indictment here, charging Head, among others, with one count (Count 1) of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, and eleven counts (Counts 2–12) of mail fraud, in violation of 18 U.S.C. § 1341. Superseding Indictment, ECF No. 303. On May 30,

1

2013, at the conclusion of a sixteen-day trial, a jury unanimously found Head guilty of Counts 1, 3 and 11.  May 14, 2013 Hr'g Min., ECF No. 770; Verdict, ECF No. 774.

On October 29, 2014, the court sentenced Head to 120 months imprisonment, 36 months supervised release and a $300 special assessment, with restitution to be determined at a later date.  Oct. 29, 2014 Sentencing Hr'g, ECF No. 1025; Judgment and Commitment ("J&C"), ECF No. 1040.  On February 10, 2015, the parties stipulated that Head owed $8,236,871.43 in restitution, *see* Restitution Stip., ECF No. 1246, and the court entered an amended judgment accordingly, Am. J&C, ECF No. 1260.

Meanwhile, on October 30, 2014, Head, along with his brother and coconspirator Charles Head, appealed his conviction based on this court's alleged errors related to the Speedy Trial Act, a certain unanimity instruction and sentencing.  *See* ECF No. 1032.  On June 27, 2017, the Ninth Circuit returned an unpublished memorandum affirming Head's conviction and sentence.  ECF No. 1553.

Now, Head asks this court to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 based on a variety of alleged errors.  Mot.  Head's original motion brought thirteen separate grounds for relief, *see generally id.*, while supplemental filings, approved by the court, have brought additional grounds for relief, *see* Supp. Mot., ECF No. 1584; Mot. Am., ECF No. 1586.  Taken together, the filings advance twenty-four separate theories of relief.  The government opposes Head's motion, Opp'n, and Head has filed a reply, Reply.  As noted, Head also asks the court to appoint counsel to assist with his § 2255 motion.  Mot. Counsel.

II.     LEGAL STANDARD

A federal prisoner collaterally attacking the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence.  *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, a federal court may grant relief "if the sentence was imposed in violation of the Constitution or laws of the United States."  *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citations omitted).

2

III. DISCUSSION

    A. Motion to Appoint Counsel

As a threshold matter, although the court found it appropriate to appoint counsel for the limited purposes of assisting Head with his recent motion for compassionate release given that time was of the essence, *see* ECF No. 1699, no such justification exists for the present motion and there is no indication Mr. Head has not been able to fairly present the grounds for his motion so as to support the court's full and fair consideration. *See Sanchez v. United States*, 50 F.3d 1448, 1456 (9th Cir. 1995) ("[T]here is no constitutional right to counsel at a collateral, post-conviction section 2255 proceeding."). Accordingly, Head's motion for assistance of counsel is denied.

    B. Theories of Relief Under § 2255

Head's grounds for seeking relief under § 2255 can be grouped into three types of constitutional violations: due process, ineffective assistance of counsel and confrontation clause based on the Sixth Amendment. The court addresses each ground for relief within each category.

        1. Due Process

Head raises due process concerns in grounds one, four and twelve of his motion. Mot. at 4, 8, 21.[1] In ground one, he argues his due process rights were violated when the court relied on essentially the same factual scenario when sentencing him and convicted coconspirator Leonard Bernot, but impermissibly applied the facts differently to each. *Id.* at 4. Specifically, he argues the court erred when it found Head's relevant conduct extended to transactions beyond his own, when it found Bernot's relevant conduct, as defined by U.S.S.G. § 1B1.3(a)(1)(B), was limited to Bernot's own transactions. *Id.* In ground four, Head claims his due process rights were violated when the court and the government[2] relied on Paragraph 12 of the presentence report ("PSR") after the court made a factual finding contrary to the contents of that paragraph earlier in

---

[1] For ease of reference, the court refers to each document's CM/ECF generated page number, not the internal pagination.

[2] Without great clarity, Head lumps together the court and the government in apparently challenging the actions of both.

3

the case. *Id.* at 8.  This violation, Head says, was perpetuated by his counsel's and the government's failure to object to the court's adoption of this portion of the PSR. *Id.*  Finally, in ground twelve, Head argues the court violated due process by utilizing aspects of acquitted, dismissed or uncharged crimes in considering relevant conduct for purposes of its sentencing computation, resulting in an unjustified sentencing enhancement. *Id.* at 21.

The government argues Head's contentions fail as a matter of law.  As to ground one, the government asserts that both the sentencing guidelines and the case law mandate the court make an individualized determination regarding Head's relevant conduct; therefore, a prior factual finding based on a codefendant's case is not per se applicable to other coconspirators. Opp'n at 17–20.  As to ground four, the government argues nothing in the record indicates the court or the government "utilized" Paragraph 12 of the PSR for purposes of sentencing; even if the court did, Paragraph 12 does not contradict the court's prior findings as to Bernot. *Id.* at 20–21.  Finally, with respect to ground twelve, the government contends consideration of uncharged or acquitted conduct, related to lender losses here, is permissible as relevant conduct at sentencing. *Id.* at 31.

The government is correct on all fronts.  A court's sentencing determination under the Sentencing Guidelines will generally comport with due process so long as the court "did not[] incorrectly calculate the advisory Guidelines range, fail to consider the § 3553(a) factors, rely on clearly erroneous facts, treat the advisory Guidelines as mandatory, or fail to explain the chosen sentence and any deviation from the advisory Guidelines range." *United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  For this reason, sentencing courts are afforded substantial discretion following calculation of the guidelines range. *United States v. Mattea*, 895 F.3d 762, 767 (D.C. Cir. 2018) (citing *United States v. Ballestas*, 795 F.3d 138, 150 (D.C. Cir. 2015)).

None of the grounds raised here establishes that the court or government deprived Head of his due process protections.  Head's argument in ground one, that the court erred by failing to apply its prior factual findings regarding Bernot equally to him, Mot. at 4, does not properly acknowledge the provisions of U.S.S.G. § 1B1.3(a)(1)(B), which, in the case of a

"jointly undertaken criminal activity," instructs the court to consider the acts of others taken within, in furtherance of, and in connection to the underlying criminal activity. As the government correctly highlights, application note 3(B) to this section of the Guidelines explains that "the scope of the 'jointly undertaken criminal activity' is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3(a)(1)(B), appl. note 3(B). The court did not err in performing an individualized assessment of Head's involvement in the conspiracy and concluding that transactions beyond his own were relevant in its sentencing determination, regardless of any prior finding applicable to coconspirator Bernot.

Regarding ground four, Head presents no credible evidence or argument that Paragraph 12 of the PSR carried undue or improper weight in the court's sentencing determination. In his reply, Head claims the court utilized Paragraph 12 "when it came to calculating losses for sentencing enhancement purposes" because Paragraph 12 states that "the conspirators were interconnected and accountable to each other," Reply at 5; however, he does not anywhere in the record demonstrate how the court, or the government for that matter, improperly relied on that paragraph and its purportedly "extremely broad and all encompassing statement." *Id.* Nothing in the record suggests the court did not consider all relevant conduct in performing an individualized assessment of Head's involvement as instructed by U.S.S.G. § 1B1.3(a)(1)(B).

Finally, as to ground twelve, it is well settled that "a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction." *Settles*, 530 F.3d at 923 (citing, inter alia, *United States v. Watts*, 519 U.S. 148, 156–57 (1997)); *see also United States v. May*, 706 F.3d 1209, 1213 (9th Cir. 2013) ("Because relevant conduct may include a broader range of conduct than the underlying offense conduct, a district court may properly consider charged, uncharged, and acquitted conduct." (internal quotations and alteration omitted)). Head makes no argument the government failed to prove the uncharged or acquitted conduct by a preponderance

5

of the evidence, or the sentence the court rendered exceeded the statutory maximum for the crime. *See* Mot. at 21, Supp. Mot. at 14–15, Reply at 8.  For this reason, ground twelve provides no basis for due process relief.

Head has not shown the court's consideration of certain relevant conduct in reaching its sentencing determination amounted to a violation of his due process rights. Accordingly, his due process challenges are denied.

### 2. Sixth Amendment – Confrontation Clause

Head raises a challenge based on the Sixth Amendment's confrontation clause in ground twenty-two of his motion.  Mot. Am. at 6.  He claims the court violated his Sixth Amendment right to confront a witness by preventing him from cross-examining certain lenders testifying at trial, and by relying on the testimony of those lenders at sentencing despite the absence of corresponding victim impact statements.  *Id.*

Head does not identify which witnesses he was prevented from examining at trial. He merely states in vague, conclusory fashion that the court somehow obstructed his "right to confront his accusers," and labels those accusers collectively "Lenders."  *Id.*; *see* Reply at 12.  To the extent Head argues the court violated his Sixth Amendment rights by relying at sentencing on the testimony of lenders for which there were no related victim impact statements, the Sixth Amendment protects a defendant's right to confront a witness against him at trial, not at sentencing.  *United States v. Littlesun*, 444 F.3d 1196, 1199 (9th Cir. 2006).  Moreover, Head did not request opportunity to present evidence at sentencing.  *See generally* Sentencing Tr. Vol. I, ECF No. 1059; Sentencing Tr. Vol. II, ECF No. 1050.

Accordingly, this claim too is denied.

### 3. Ineffective Assistance of Counsel

All twenty remaining grounds for relief are based on or related to claims of trial or appellate counsel's ineffective assistance.  The government has organized these claims helpfully in a chart in its opposition, *see* Opp'n at 17, and court reproduces that chart here for reference, with slight modifications:

| **Summary of Basis for Head's IAC Claims** | **Ground(s) in Head's Motion** |
|---|---|
| Failure to object to the court's findings as to defendant Bernot's relevant conduct should have been applied to Head. | Two (trial and appellate counsel IAC) <br> Five (trial and appellate counsel IAC) <br> Twenty (trial counsel ineffective) <br> Twenty-one (appellate counsel ineffective) |
| Failure to object to Head's having to pay restitution to lenders. | Three (including embedded appellate counsel IAC claim) <br> Fourteen (trial and appellate counsel IAC re passing mention of restitution) <br> Fifteen (trial and appellate counsel IAC re passing mention of restitution) |
| Failure to object to lenders being heard at trial as witnesses or considered as victims. | Six (trial counsel IAC for testimony by lender witnesses) <br> Eight (appellate counsel IAC) <br> Nine (trial and appellate counsel IAC for loss amount enhancement) <br> Ten (trial counsel IAC) <br> Eleven (appellate counsel IAC) <br> Thirteen (trial and appellate counsel IAC) <br> Twenty-three (trial counsel IAC) <br> Twenty-four (appellate counsel IAC) |
| Failure to object to vulnerable victim enhancement. | Seven (trial counsel IAC) |
| Failure to raise arguments about payments and evictions. | Sixteen (trial counsel IAC) <br> Seventeen (appellate counsel IAC) <br> Eighteen (trial counsel IAC) <br> Nineteen (appellate counsel IAC) |

A claim for relief based on ineffective assistance of counsel ("IAC") is comprised of two elements: (1) the defendant must show counsel's performance was so seriously deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) the defendant must show counsel's deficient performance was prejudicial to the outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* standard applies equally to ineffective assistance of appellate counsel as it does trial counsel. *Sanchez v. Hedgpeth*, 706 F. Supp. 2d 963, 1006 (C.D. Cal. 2010) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

Analyzing the first prong, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. In determining whether counsel was within this range, "hindsight is discounted by pegging adequacy to 'counsel's perspective at that time' [that] investigative

7

decisions are made and by giving a 'heavy measure of deference to counsel's judgment.'" *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (quoting *Strickland*, 466 U.S. at 691). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Errors by counsel, even if outside the range of reasonable professional assistance, do not warrant setting aside a judgment if the error would have had no effect on the judgment. *Strickland*, 466 U.S. at 691.

a) <u>Grounds two, five, twenty and twenty-one</u>

In grounds two, five, twenty and twenty-one, Head argues his trial and/or appellate counsel provided ineffective assistance by failing to object to or raise the following: (1) the court's differing application of its factual findings when sentencing him, compared to defendant Bernot; (2) the court's utilization of Paragraph 12 of the PSR; (3) the court's prior findings regarding the separation and individual attribution of illegally obtained profits; and (4) "ground twenty's fifth amendment issue." Mot. at 5, 14; Mot. Am. at 5.

These claims fail to show ineffective assistance of counsel. First, as discussed above, the court acted within its authority when considering the relevance of other actors in performing an individualized assessment of Head's involvement in the conspiracy for the purpose of sentencing, U.S.S.G. § 1B1.3(a)(1)(B), and there is no indication the court "utilized" or unduly relied on Paragraph 12 of the PSR when sentencing Head. Therefore, trial and/or appellate counsel did not render ineffective assistance by failing to object in the first instance or raise these issues with the court or on appeal. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal." (citation omitted)); *see also Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989) (noting that if petitioner challenges futile objection, he fails both *Strickland* prongs); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

Second, regardless of prior findings regarding illegally obtained profits, Head does not argue how any alleged ineffective assistance was prejudicial to the outcome of his case, an essential step in the *Strickland* analysis.

Moreover, because ground twenty-one's IAC claim is based on "Ground Twenty's fifth amendment issue," which in turn is based on the court's consideration of the actions of co-conspirators at sentencing, ground twenty-one must fail for the same reasons described above: The court properly considered the actions of co-conspirators under the authority of U.S.S.G. § 1B1.3(a)(1)(B).

Head's IAC claims under grounds two, five, twenty and twenty-one are denied.

b) <u>Grounds three, fourteen and fifteen</u>

Grounds three, fourteen and fifteen present hybrid due process-IAC claims.  In ground three, Head argues the court ordered he pay restitution to lenders for uncharged crimes (alleged due process violation), and his appellate counsel failed to raise the issue on appeal (alleged IAC violation).  In grounds fourteen and fifteen, Head argues his trial and appellate counsel erred by failing to argue the "fourteen lenders constituting the 'lender losses' were utilized by [Head]'s client's [sic] and failing to argue this during trial, as an objection to the PSR loss enhancement amounts, restitution, and (base) offense calculations." Mot. Am. at 2.

These assertions establish neither a due process claim nor an IAC claim. Regarding claim three, Head stipulated to the $8,236,871.43 restitution amount, which contained a detailed breakdown of the amount owed to each victim. *See* Restitution Stip., Ex. A; *id.* at n.1 (noting parties' agreement to appropriate restitution calculation based on jury verdicts); *see also United States v. Parrott*, 992 F.2d 914, 919 (9th Cir. 1993) (stipulation to amount of victims' losses may be accepted for purposes of restitution when court assured it was parties' intent to do so).  One of the victims was a lender. Restitution Stip., Ex. A at 1 (listing Carrington Mortgage). Moreover, as the government aptly notes, Head's fraud-based conviction invokes the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A(c)(1)(A)(ii), which defines as a victim "any person directly or proximately harmed as a result of the commission of the offense." 18 U.S.C. § 3663A(a)(2).  Lenders suffering foreclosure losses as a result of the defendant's

behavior can qualify as victims under the MVRA. *United States v. Peterson*, 538 F.3d 1064, 1077 (9th Cir. 2008). The sole lender to which restitution is owed falls within the definition of an eligible victim under § 3663A(a)(2); Head expressly agreed to pay restitution to this lender, *see* Restitution Stip., Ex. A at 1 (listing $748,500 owed to Carrington Mortgage); and he does not specifically identify here any lender that either fails to qualify under the MVRA or to which he did not stipulate to pay restitution. It does not matter, as Head argues, that the indictment does "not charge[] [him] with conspiring through the mail to defraud lenders, only homeowners," Reply at 4, given that the restitution ordered "properly accounts for the reasonably foreseeable losses to a single lender in the course of the conspiracy," which it does. Opp'n at 26. Because there is no error in the restitution ordered, there can likewise be no grounds upon which an IAC claim can rest against either trial or appellate counsel.

Additionally, the assertions Head makes in support of grounds fourteen and fifteen are not cognizable. Head claims "NONE of the (14) fourteen lenders constituting the 'lender losses' were utilized by [his] clients"; therefore, "none of the 'lenders' discussed during trial, PSR objections, sentencing and/or restitution negotiations sustained any losses associated with [his] actions." Mot. Am. at 2, 3. These assertions are confusing because, as mentioned above, the stipulated restitution order lists only one lender receiving restitution, not the fourteen Head claims here. In any event, Head fails to explain how that lender does not qualify for restitution under the MVRA based on his mere argument that any lender was used only by his clients, and apparently not him directly.

Grounds three, fourteen and fifteen are denied.

   c) <u>Grounds six, eight, nine through eleven, thirteen and twenty-three through twenty-four</u>

Collectively these grounds for relief assert that trial counsel was ineffective for failing to object to the jury's consideration of lenders as witnesses and the court's consideration of lenders as victims for purposes of restitution. In claims eight, nine, eleven, thirteen and twenty-four he claims appellate counsel rendered ineffective assistance for failing to raise these

10

same issues on appeal. To the extent these claims are duplicative of those discussed above, the court need not repeat the conclusions it already has reached regarding counsel's failure to object to the court's alleged impropriety in identifying a certain lender as victim, the court's ordering restitution to that victim, and the court's reliance on acquitted, dismissed or uncharged conduct at sentencing.

As to any argument regarding counsel's failure to object to lender representatives' testimony at trial, those arguments similarly lack merit. The test for permitting testimony at trial is relevance under Federal Rules of Evidence 401 and 402, not whether a witness is or works for a party named in the indictment. *See, e.g.*, *United States v. Thomas*, 32 F.3d 418, 420 (9th Cir. 1994) (reversing district court's failure to let defendant present witnesses unnamed in mail fraud indictment). Head makes no showing that the testimony of the two lender representatives at trial, Irma Valdez, Trial Tr. at 577–653, ECF No. 807, and Haydi Galindo, Trial Tr. 771–805, was irrelevant to the issue of materiality of certain false statements, *see* Opp'n at 28; *see also* Reply. Any objection raised by trial or appellate counsel on those grounds would have been futile. *See Boag*, 769 F.2d at 1344.

Finally, as to Head's IAC claims within this collection of theories, given the discussion above, there are no underlying errors creating the basis for a meritorious objection that trial or appellate counsel overlooked. Moreover, as the government notes, there were occasions where counsel did lodge objections, yet Head argues counsel failed to do so. *See* Opp'n at 31 (noting areas in record memorializing defense counsel's objections to lenders being considered as victims and lender foreclosure losses included in monetary loss consideration (ECF No. 931 at 9–15, 19), the government's briefing on those matters (ECF 931 at 14–15), and the court's rejection of counsel's objections (Sentencing Tr. Vol. I at 1:17–3:16)); *see also* Opp'n at 29 (noting "variance issue" regarding false statements to lenders raised on appeal and dispelled by the Ninth Circuit's affirmation of Head's conviction). Head also fails to show how under the *Strickland* test any purported ineffective assistance was prejudicial to the outcome of his case.

These grounds also are denied.

11

d) <u>Ground seven</u>

In ground seven Head claims he received ineffective assistance when his trial counsel failed to appropriately respond to the court's application of the vulnerable victim enhancement at sentencing. Mot. at 16. He also appears to argue his counsel failed to object to, and thus preserve as an issue regarding, the court's failure to use the word "particularly" before "susceptible" in the PSR. *Id.*

Neither argument holds weight. Head raised the vulnerable victim enhancement argument on appeal and the Ninth Circuit rejected it. *See United States v. Head*, 700 F. App'x 612, 614 (9th Cir. 2017) ("The district court did not err in applying the vulnerable victim enhancement under United States Sentencing Guidelines § 3A1.1, nor did it impose on Jeremy Michael Head a substantively unreasonable sentence."). Head may not now seek reconsideration of the issue. *See Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion."). Because the court's application of the vulnerable victim enhancement was not in error, Head's counsel did not commit constitutional error by failing to object to absence of the word "particularly" in the PSR's discussion regarding the enhancement. *See Boag*, 769 F.2d at 1344.

Ground seven is denied for these reasons.

e) <u>Grounds sixteen through nineteen</u>

In grounds sixteen through nineteen Head argues his trial and appellate counsel committed reversible error by "failing to argue throughout the trial and at final arguments" that he was the only conspirator to keep his homeowner victims current by paying their mortgages himself. Mot. at 3–5. But, as the government correctly highlights, Head's trial counsel featured this argument prominently in his closing arguments. *See* Opp'n at 34 (quoting Trial Tr. 1531:12–20). Despite Head's assertions to the contrary in reply, *see* Reply 9–11, he provides no support for the notion that by conspicuously advancing a strongly favorable point in closing argument, trial counsel commits constitutional error if the themes supporting that argument are not hammered home throughout trial proceedings. The case law instructs that great deference must

be afforded to counsel's tactical decisions at trial, and Head does nothing to show counsel's decisions here were beyond the bounds of acceptable lawyering. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam); *United States v. Ferreira–Alameda*, 815 F.2d 1251, 1254 (9th Cir. 1986).

Grounds sixteen through nineteen are also denied.

### C. Certificate of Appealability

A court may only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

As discussed above, Head fails to raise any viable due process, confrontation clause or ineffective assistance of counsel claims. On this record, the court finds that jurists of reason could not debate whether the petition states a valid claim, nor could they find it debatable whether the court is correct in its ruling. Thus, no certificate of appealability will issue.

## IV. CONCLUSION

Defendant's motion to correct or set aside his sentence under 28 U.S.C. 2255, ECF No. 1579, and motion for assistance of counsel, ECF No. 1650, are DENIED. The Clerk of Court is directed to close the companion case, 2:18-cv-01639-KJM. The court declines to issue a certificate of appealability.

IT IS SO ORDERED.

DATED: July 19, 2020.

CHIEF UNITED STATES DISTRICT JUDGE